UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| WESLEY ROBERTS,<br><br>Plaintiff,<br><br>v.<br><br>JUDGE EXECUTIVE HAROLD TOMLINSON, *et al.*,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil No. 3:19-cv-00046-GFVT<br><br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

Before the Court is Defendants' Motion for Summary Judgment. [R. 21.] Plaintiff Wesley Roberts was formerly incarcerated at the Carroll County Detention Center. He has filed suit under § 1983 against Harold Tomlinson and John Proctor for deliberate indifference to his serious medical needs, civil conspiracy, and liability under the *Monell* doctrine. [R. 10.] Defendants deny any delays or inadequacies in the medical treatment Mr. Roberts' received while incarcerated and assert that Mr. Tomlinson and Mr. Proctor could not have committed the acts alleged in the Amended Complaint because neither held their current positions at the time Mr. Roberts was incarcerated. [R. 21 at 1.] For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

**I**

On April 19, 2018, Mr. Roberts was arrested for violation of pre-trial diversion and drug possession charges. [R. 21 at 2.] He was taken to Carroll County Detention Center. [R. 22 at 34.] While there, on June 1, Mr. Roberts became ill. *Id.* at 36–37. He spoke with fellow inmates about his symptoms and complained 'constantly' to the deputy jailers, requesting

medical attention. *Id.* at 37–41. On June 3, a Request for Medical Attention was completed on his behalf. [R. 21 at 2.] The request indicated Mr. Roberts' had a swollen face and lips. *Id.* The next day, Mr. Roberts saw Nurse Marilyn Keith, an employee of Southern Health Partners Inc., at the jail. [R. 22 at 44.] Ms. Keith confirmed Mr. Roberts had a swollen face and upper lip, tooth pain, headache, and difficulty breathing, talking, and eating. [R. 21 at 2.] In light of his condition, the Detention Center immediately released Mr. Roberts from custody and had him taken to Carrol County Memorial Hospital. [R. 22 at 44, 47.] From there he was transferred to Louisville Norton's Hospital and treated for cellulitis. *Id.* at 45. With the help of steroids administered to him over the course of less than five outpatient visits, Mr. Roberts' fully recovered. *Id.* at 51–52. He was reincarcerated at Carroll County on July 10. *Id.* at 53.

On July 23, Mr. Roberts informed prison staff of a rash on his groin. *Id.* at 56. The next day, he again saw Nurse Keith, who diagnosed him with ringworm and gave him a topical ointment to put on the affected area. *Id.* at 57, 61. Shortly thereafter, on August 1, Mr. Roberts was released from custody and he checked into a drug treatment program called The Healing Place. *Id.* at 61. During this program Mr. Roberts' received medication and ointment until the ringworm went away, though he was left with a scar. *Id.* at 61–63, 65.

Mr. Roberts filed his initial Complaint in Carroll County Circuit Court on June 3, 2019, alleging Judge Executive Harold Tomlinson, Jailer of Carroll County Detention Center John Proctor, and Southern Health Partners Inc. were deliberately indifferent to his need for medical care as part of a "custom" to decrease prison costs. [R. 1-1 at 2–4.] Defendants removed the action to this Court because Mr. Roberts asserted a claim under 42 U.S.C. § 1983 and state law claims encompassed by supplemental jurisdiction. [R. 1 at 2.]

In his Amended Complaint, Mr. Roberts brings three counts against Mr. Tomlinson and Mr. Proctor in their personal and official capacities.[1] [*See* R. 10.] Count I cites 42 U.S.C. § 1983. *Id.* at ¶ 24. Under this count, Mr. Roberts alleges Defendants, through their staff of Deputy Jailers, knew of his medical conditions while he was at Carroll County Detention Center and acted deliberately indifferent, resulting in pain and suffering. *Id.* at ¶¶ 13–16. In Count II[2] Mr. Roberts claims Defendants developed a practice of delaying or depriving inmates of medical treatment to save the county money. *Id.* at ¶¶ 25–27. He states he was a victim of this system and that Defendants took overt actions to implement it against him. *Id.* at ¶¶ 28–30. Count III[3] asserts that due to the prior counts and Mr. Roberts' injuries, the prison should be liable under the *Monell* doctrine. *Id.* at ¶¶ 31–34.

After some discovery, Defendants now file a Motion for Summary Judgment. [R. 21.] Defendants deny any delays or inadequacies in the medical treatment Mr. Roberts' received while incarcerated. *Id.* at 1. They also argue that even if Mr. Roberts had valid claims regarding the medical treatment, Mr. Tomlinson and Mr. Proctor could not have committed the acts alleged in the Amended Complaint because neither held their current positions at the time Mr. Roberts was incarcerated. *Id*. Mr. Roberts has not filed a response to Defendants' Motion for Summary Judgment. Nonetheless, this matter is ripe for adjudication, and the Court turns to address the merits.

## II

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[1] Mr. Roberts acquiesced to the dismissal of Southern Health Partners Inc. [R. 14], which the Court ordered. [R. 15.]
[2] Mr. Roberts' Amended Complaint calls this count, "Count III." [R. 10 at 4.]
[3] Mr. Roberts' Amended Complaint calls this count, "Count IV." [R. 10 at 5.]

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying the parts of the record that establish absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. Once the movant has satisfied its burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party

4

has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

### A

Mr. Roberts alleges Defendants in their individual capacities acted deliberately indifferent to his medical needs. [R. 10 at 2–4.] Defendants deny any indifference and point out that neither Defendant held their current positions as Jailor and Judge during the time in which Mr. Roberts experienced his medical issues. [R. 21 at 1.]

"The deliberate indifference to serious medical needs of prisoners—e.g., the failure to respond to medical needs, intentional denial or delay of medical care, or intentional interference with a prescribed treatment—constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). Though Mr. Roberts brings a Fourteenth Amendment claim, it is "analyzed under the same rubric as Eighth Amendment claims." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013).

To assess these claims against persons in their individual capacity, the Sixth Circuit employs a two-prong test featuring objective and subjective parts. *Burgess*, 735 F.3d at 476. First, under the objective prong, the court reviews whether the inmate had a "sufficiently serious medical need." *Id.* (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). And second, under the subjective prong, the court considers whether the defendant had a "sufficiently culpable state of mind." *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

For the objective prong, "[a] medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Burgess*, 735 F.3d at 476. Mr. Roberts stated in his

deposition that he repeatedly asked deputy jailers for help with his facial swelling before he was diagnosed with cellulitis. [R. 22 at 37.] He also stated other inmates in his cell tried to get him help because they noticed his condition. *Id.* at 37–38. These laymen recognized the need for Mr. Roberts to receive medical attention. Further, Mr. Roberts' face became so swollen that he had difficulty breathing, talking, and eating, and he was treated by physicians at Louisville Norton Hospital. [R. 21 at 2–3.] As for his ringworm infection, this was not visible to others. [R. 22 at 55.] Still, Nurse Keith and physicians at The Healing Place recognized the necessity to treat this condition. *Id.* at 57–65. Thus, consistent with *Burgess*, Mr. Roberts suffered sufficiently serious medical needs, and the objective element of deliberate indifference is satisfied. *Burgess*, 735 F.3d at 476.

The second, subjective prong requires the defendants have "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 896 (6th Cir. 2004). Mr. Roberts testified he did not have any reason to believe Mr. Proctor or Mr. Tomlinson knew of the rings on his inner thigh, which was diagnosed as ringworm. [R. 22 at 58–59.] Similarly, Mr. Roberts could not present any reasons to believe that Mr. Proctor or Mr. Tomlinson knew of his cellulitis symptoms. *Id.* at 41–42. He also conceded Mr. Proctor was not the jailer in June and July of 2018, and that he did not know who Mr. Tomlinson was at all. *Id.* Mr. Roberts has fallen short of presenting any evidence or facts which, even in the light most favorable to him, may permit the Court to find Defendants knew of his medical needs and disregarded them with deliberate indifference or any culpability.

Even assuming *arguendo* that Mr. Proctor or Mr. Tomlinson knew of Mr. Roberts symptoms and were involved in the administration of medical care at Carroll County Detention Center in June and July of 2018, Mr. Roberts' claims do not rise to deliberate indifference. A

6

showing of deliberate indifference requires more than medical negligence. *See Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018). "[T]he plaintiff must show that each defendant acted with a mental state equivalent to criminal recklessness." *Id.* (internal citation omitted). In *Rowland v. Southern Health Partners Inc.*, the plaintiff inmate alleged defendants acted with deliberate indifference in responding to her medical needs. 2020 WL 4288401 (E.D. Ky. July 27, 2020). There, the plaintiff's medical treatment may have been delayed over a week, though the plaintiff eventually received medical attention.[4] *Id.* at *3–4. As a result, the Court granted summary judgment for the defendants because medical treatment delayed approximately a week did not reach the high bar of deliberate indifference. *Id.* at *4 ("Her care may not have been perfect . . . Regardless, nothing in the record supports a finding that [the defendant] acted with criminal recklessness.").

    Mr. Roberts claims prison officials should have responded to his medical needs more quickly. [R. 22 at 76.] He alleges the delay between when he first began complaining of his symptoms on June 1 to when he saw Nurse Keith on June 4 was too long. *Id.* The Court recognizes that Mr. Roberts' symptoms and ultimate diagnosis with cellulitis were serious medical conditions. However, because the Court has held a delay in an inmate's reception of medical treatment of over a week does not rise to deliberate indifference, it cannot be said a delay of two or three days does. *See Rowland*, 2020 WL 4288401, at *3–4. Thus, Mr. Roberts' does not present any genuine issues of material fact, and even if he did, his deliberate indifference claim falls short. As such, the Court will grant Defendants' motion for summary judgment in regard to Count I.

---

[4] The official record was unclear as to how many days passed in the delay. *Id.*

**B**

With respect to the second count of the Amended Complaint for civil conspiracy, Defendants disclaim the existence of any such conspiracy or custom. [R. 21 at 6–8.] They argue summary judgment is appropriate because they were not in positions to conspire against Mr. Roberts, and even if they were, there is no evidence of any conspiracy or custom. *Id.*

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn,* 658 F.3d 598, 602 (6th Cir. 2011) (internal citation and quotations omitted). To prevail on a civil conspiracy claim, a plaintiff must prove: "(1) a single plan existed, (2) [the defendant] shared in the general conspiratorial objective to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury to [the plaintiff]." *Regets v. City of Plymouth*, 568 F. App'x 380, 391 (6th Cir. 2014) (quoting *Bazzi*, 658 F.3d at 602). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy." *Callahan v. Simmons*, 47 F.3d 1167 (6th Cir. 1995) (quoting *Hooks v. Hooks,* 771 F.2d 935, 943-44 (6th Cir. 1985)). Further, "a plaintiff may rely on circumstantial evidence to establish an agreement among the conspirators." *Hensley v. Gassman,* 693 F.3d 681, 695 (6th Cir. 2012). However, mere speculation and conjecture are insufficient to establish the existence of an agreement. *Regets,* 568 F. App'x at 391 (citing *Moore v. City of Paducah,* 890 F.2d 831, 834 (6th Cir.1989)).

The record in this case, even when the facts are considered in favor of the movant, does not support a civil conspiracy under § 1983. First, it is impossible that Tomlinson and Proctor could have formed a single plan to deprive Roberts of his right to adequate medical care since neither of them held office during the time frame he was incarcerated. [R. 21 at 7.] Even

8

assuming *arguendo* that Tomlinson and Proctor were in a position to conspire against Mr. Roberts, there is no evidence that they actually did. Mr. Roberts' conspiracy claim is premised entirely on the assertion in his Amended Complaint that Tomlinson and Proctor "had a plan and a goal or objective to decrease the risk to [Roberts'] health and safety" and that they took "overt acts to achieve" the plan and goal or objective. [R. 10 at 5.] However, Mr. Roberts has taken no discovery to support his claims. On the contrary, when being deposed by Defendants, Mr. Roberts disavowed any knowledge or proof of the alleged plan or goal. [R. 22 at 19.] When asked what facts or information he relies on to support his allegations of the conspiracy, Mr. Roberts stated, "I don't know about that." *Id*. When asked what overt acts he contends that Proctor or Tomlinson took to deprive inmates of medical care, he responded, "I don't know." *Id*.

Despite Mr. Roberts' allegations, the record does not support a conclusion that Tomlinson and Proctor formed a "single plan" or shared a "conspiratorial objective." They were not in a position to do so, and even if they were, there is no evidence to suggest that they communicated with one another to formulate a plan to injure Mr. Roberts. Therefore, summary judgment is be granted in favor of Defendants as to the second count of the Amended Complaint.

### C

The final count of the Amended Complaint asserts that Defendants should be held liable in their official capacities. [R. 10 at 5.] Defendants argue they are entitled to summary judgment as it relates to any claims against them in their official capacities because they did not have any supervisory responsibility over Mr. Roberts during the relevant time periods. [R. 21 at 6.]

The law is clear that supervisory liability is inapplicable to and unavailable in a § 1983 action. *See Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 640 (6th Cir. 2003). Generally, to recover against a given defendant in a civil rights action, the plaintiff "must allege

that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x. 85, 86 (6th Cir. 2003). As such, courts require Plaintiffs seeking to hold supervisors liable in the § 1983 context prove that the supervisors were subjectively aware of the risk and consciously disregarded it. *See, e.g.*, *Counterman v. Warren Cty. Corr. Facility*, 176 F. App'x 234, 241 (3d Cir. 2006) (citations omitted).

Mr. Roberts has not responded to Defendants' summary judgment motion and has not otherwise presented any evidence that Mr. Tomlinson or Mr. Proctor were subjectively aware of and consciously disregarded the minor delays in his medical treatment. He states in his deposition that he does not know Mr. Tomlinson and that Mr. Proctor was not the Jailer of Carroll County Detention Center while he was incarcerated there. [R. 22 at 41–42.] Defendants further point out that during Mr. Roberts' incarceration, Mr. Tomlinson had not yet become an Executive Judge of Carroll County. [R. 21 at 1.] Therefore, Defendants' were not supervisors of Carroll County Detention Center or its processes of administering medical attention during the periods of time of which Mr. Roberts complains, and it is impossible to assign Defendants the liability Mr. Roberts requests under this count. Thus, summary judgment should be granted in favor of Defendants on the third count of the Amended Complaint.

### III

Mr. Roberts has not presented any genuine disputes of fact, or any set of facts upon which he is entitled to relief. Defendants clearly articulate that they cannot be held liable because they were not in their respective positions or otherwise involved in any of the events related to Mr. Roberts' medical treatment in the summer of 2018. For the foregoing reasons, the Court agrees with Defendants. Accordingly, and the Court being sufficiently advised, it is

hereby **ORDERED** Defendants' Motion for Summary Judgment **[R. 21]** is **GRANTED**.

Judgment in favor of Defendants will be entered promptly.

  This the 14th day of August, 2020.

Gregory F. Van Tatenhove
United States District Judge